UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Darren Brady

   v.                                                          Case No. 19-cv-00147-JL

Whitefield Police Department,
Eoin Stapleton,
Wendy E. Roberts, and
Sandra St. Pierre

## REPORT AND RECOMMENDATION

Before the court is pro se plaintiff Darren Brady's complaint (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights by subjecting him to false arrest, false imprisonment, and malicious prosecution. The complaint is before this magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(1).

## Background

This action relates to Brady's February 18, 2017 arrest and detention for one or more sexual assault charge(s) involving a child. The court has done its best to identify the relevant factual allegations and summarize them here.[1]

---

[1] The complaint is repetitive, loaded with tangential and extraneous information, and given to philosophical meanderings.

According to the complaint, Defendant Eoin Stapleton, a police officer with the Whitefield Police Department ("WPD"), arrested Brady on February 18, 2017.  See Compl. (Doc. No. 1), at 1.  Brady does not state the reason for his arrest on that date.  A warrant for Brady's arrest was issued on March 27, 2017, see id., at 6, and a probable cause hearing was held on April 7, 2017, see id. at 1.  The charge(s) against Brady were dismissed on April 7, 2017, after the probable cause hearing. See id.  Brady was held in pre-trial detention from February 18, 2017 until April 7, 2017.  See id.

In the complaint, Brady also alleges that Stapleton and Defendant Sandra St. Pierre, identified as a special education helper "- [C]oos [C]ounty – of the Whitefield N.H. Superintendent-school district- White Mountains Regional school," id. at 2, conducted a sexual assault investigation targeting Brady.  Brady alleges:  1) neither Stapleton nor St. Pierre was trained or certified to conduct interviews of victims of sexual assault, see Compl. (Doc. No. 1), at 10-11; 2) Stapleton and St. Pierre subjected the victim to days of repeated psychological brainwashing and mental and physical abuse, see id. at 2, 4; 3) Stapleton and St. Pierre targeted Brady because of past conflicts he had with each; and 4) St. Pierre was a friend of the victim's and the real assailant's

2

foster parents and wanted to cover up allegations of abuse within the foster family, see id.

Brady alleges he and Stapleton have a history of conflict, including: Stapleton refused to investigate rape allegations Brady's girlfriend made against "a gang of white guys," id. at 1; Stapleton blamed Brady when Stapleton was refused alcohol service at a local establishment, see id. at 4; and Brady made numerous complaints about Stapleton being drunk while tending bar before Stapleton became a police officer, see id. at 5. Brady accuses St. Pierre of causing trouble after Brady refused to date St. Pierre and of stalking him and his family on social media. See Compl. (Doc. No. 1), at 3, 10. Brady asserts that he has filed numerous complaints against St. Pierre with the WPD and the New Hampshire Board of Education. See id. at 3, 6.

Brady alleges that defendants Stapleton, St. Pierre, and Coos County prosecutor Wendy E. Roberts knowingly provided false information to a Coos County judge in order to obtain the March 27, 2017 warrant for Brady's arrest. See id. at 1-2. Specifically, Brady asserts that the defendants told the judge that the victim, identified as an eight-year-old girl with mental health needs, was sexually assaulted by a black male, when they knew the girl repeatedly had identified a white female as her assailant. See id. at 2, 4. Brady asserts he is the only black male in Whitefield. See id. at 3. Brady also

alleges that the defendants told the court that St. Pierre was a Child Advocate Center ("C.A.C.") investigator and a New Hampshire Department of Health and Human Services, Division of Children, Youth and Families ("DCYF") worker who was trained to interview victims of sexual assault, when they knew St. Pierre did not work for either entity and was not trained or certified to interview victims of sexual assault.  See id. at 10-12.

Brady further alleges that during his probable cause hearing, Stapleton identified St. Pierre as a C.A.C. investigator who had worked with him on the case, see Compl. (Doc. No. 1), at 6, and testified that the child had been questioned at the Groveton C.A.C., see id. at 2, 4, 6.  Brady claims in the complaint that St. Pierre does not work for the C.A.C. and that the C.A.C. has no record of the child having been questioned at any of its locations.  See id. at 4.

Brady asserts that the WPD knew of his conflicts with Stapleton and St. Pierre when it authorized them to investigate sexual assault allegations involving the victim.  He also alleges the WPD knew St. Pierre was not a C.A.C. investigator, a DCYF worker, or licensed, certified, or trained to question victims of sexual assault, but allowed her to be represented as such in the warrant application.

Brady seeks $350,000 in damages, court filing fees, unspecified state fees, and out-of-state college fees.  He seeks

4

an order requiring that the victim's school locker be moved away from his stepdaughter's locker; enjoining the defendants from "stopping him" from working for DCYF or the "human services field"; requiring the defendants to hand over any and all information concerning him, and ordering the defendants to stop talking about him.  Brady also seeks assistance relocating.  See id. at 27.

## Preliminary Review Standard

The court reviews complaints filed by pro se plaintiffs to determine, among other things, whether plaintiff has asserted any claim upon which relief might be granted.  See 28 U.S.C. § 1915(e)(2), LR 4.3(d)(1).  In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citations omitted).

## Discussion

Liberally construed, the Complaint appears to assert Fourth Amendment claims of false arrest, false imprisonment, and

5

malicious prosecution and a Fourteenth Amendment due process claim under 42 U.S.C. § 1983, "which provides a cause of action for state deprivations of federal rights," Nieves v. Bartlett, No. 17-1174, 2019 U.S. LEXIS 3556, at *10, 2019 WL 2257157, at *4 (U.S. May 28, 2019).  Brady also alleges, under state law, that the defendants are liable to him for "breach of fiduciary duty," Compl. (Doc. No. 1), at 10, breach of duty of reasonable care, see id. at 13-14, and negligent supervision and training, see id. at 14.

I.   42 U.S.C. § 1983 Claims

   A.   Whitefield Police Department

A municipal police department is not an entity subject to suit under § 1983.  Henschel v. Worcester Police Dep't, 445 F.2d 624 (1st Cir. 1971) ("If a Police Department may be successfully sued, it is the city which will pay; the result is the same as suing the city."); see also Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1080–81, n.10 (11th Cir. 2007) ("The complaint against the [Miami-Dade County Police Department and the Miami-Dade County Department of Corrections and Rehabilitation] was dismissed because they are not legal entities subject to suit.  The case proceeded against only Miami-Dade County.").  Moreover, in a § 1983 case, a city or other local governmental entity cannot be

6

subject to liability at all unless the harm was caused in the implementation of "official municipal policy." Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1951 (2018) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); L.A. Cty. v. Humphries, 562 U.S. 29, 36 (2010)).

The assertions in the complaint do not demonstrate that the WPD was implementing an official municipal policy when it allegedly authorized Stapleton and St. Pierre to investigate sexual assault allegations against the victim notwithstanding their lack of training in that area and their prior conflicts with Brady.  Nor does Brady allege the WPD was acting pursuant to some official municipal policy when it purportedly permitted misrepresentation of St. Pierre's employment and training in the warrant application.  Furthermore, the complaint contains no facts which would permit a reasonable inference there was an official municipal policy behind either of WPD's alleged acts. Accordingly, the district judge should dismiss all the § 1983 claims asserted against the Whitefield Police Department.

   B.   <u>Individual Defendants</u>

      1.   <u>False Arrest and False Imprisonment</u>

In general, an arrest is lawful under the Fourth Amendment if the police officer has probable cause.  See Holder v. Town of

7

Sandown, 585 F.3d 500, 504 (1st Cir. 2009). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186, 192 (2013) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979) (internal quotation marks omitted)). To that end, a police officer has probable cause when, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); see also Acosta v. Ames Dep't Stores, 386 F.3d 5, 9 (1st Cir. 2004).

To prevail on a claim for false imprisonment, a plaintiff must demonstrate that:

> (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority.

Ojo v. Lorenzo, 64 A.3d 974, 982 (N.H. 2013). "Although 'a lack of probable cause is not an element of false imprisonment'" that must be pled under state common law, "probable cause is 'a defense to a [tort] claim for false imprisonment resulting from a warrantless detention.'" Farrelly v. City of Concord, 130

A.3d 548, 560 (N.H. 2015).

Brady alleges that Stapleton, St. Pierre, and Roberts arrested him, or successfully sought a warrant for his arrest, based upon personal animus and/or information they knew to be false.  Brady also alleges that as a result of his arrest, he was detained from February 18, 2017 until April 7, 2017. Finally, Brady asserts that he has been unable to find work in his chosen field and has suffered economic, mental, and emotional harm due to his arrest and detention on charges of sexually assaulting a child.

The allegations in the complaint, taken as true for purposes of preliminary review, sufficiently state a claim for false arrest and false imprisonment to survive preliminary review.  In an Order issued this date, the court has directed service of Brady's Fourth Amendment false arrest and false imprisonment claims against Stapleton, St. Pierre, and Roberts.

### 2. Malicious Prosecution

"[A] plaintiff may bring a suit under § 1983 ... [for a Fourth Amendment malicious prosecution claim] if he can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'"  Hernandez-Cuevas, 723 F.3d at 101 (citation omitted).

9

Similarly, under state law, the elements of malicious prosecution are: "(1) the plaintiff was subjected to a criminal prosecution ... instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor." Farrelly, 130 A.3d at 560.

The allegations in the complaint are sufficient to state a claim for malicious prosecution, to survive preliminary review. In an Order issued this date, the court has directed service of Brady's Fourth Amendment claims for malicious prosecution against Stapleton, St. Pierre, and Roberts.

### 3. Due Process

Brady alleges that the defendants refused to provide him with "all written words, audio, video[ ] of . . . illegal brainwashing, questioning of . . . so- called victim in so- call (C.A.C.) Groveton NH location; that points to the real person that should be in jail[.]" Compl. (Doc. No. 1), at 16. Brady claims the defendants' failure to provide him the aforementioned information violated the disclosure obligation articulated in Brady v. Maryland, 373 U.S. 83, 87 (1963).

"[A] state actor violates a criminal defendant's due process rights by the knowing use of perjured testimony or the deliberate suppression of evidence leading to the defendant's

10

conviction." Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013) (citing Brady, 373 U.S. at 86; Kyles v. Whitley, 514 U.S. 419, 432 (1995)).  In Brady, the Supreme Court held that a prosecutor violates a criminal defendant's due process rights merely by failing to disclose material evidence in his possession that is favorable to the defendant, irrespective of the good or bad faith of the prosecutor.  Drumgold, 707 F.3d at 38 (citing Brady, 373 U.S. at 87).  Evidence is favorable to a defendant if it is either exculpatory or impeaching in nature.  See United States v. Bagley, 473 U.S. 667, 676 (1985).  Evidence is material if there is a "reasonable probability" that, had it been disclosed to the defense, the result of the proceeding would have been different.  Id. at 682.  A reasonable probability exists when the withholding of evidence undermines confidence in the outcome of the proceeding.  See Kyles, 514 U.S. at 434.

The criminal proceeding at issue here is Brady's probable cause hearing.[2]  According to the complaint, the charges against Brady were dismissed at the probable cause hearing.  Therefore, he cannot demonstrate that the undisclosed evidence was material to the outcome of the proceeding.  See Bagley, 473 U.S. at 682;

---

[2]Although plaintiff contends the defendants violated Brady by failing to disclose "all the facts" to the judge issuing the arrest warrant, those allegations go to the issue of whether his arrest and prosecution violated the Fourth Amendment.

Kyles, 514 U.S. at 434. Consequently, Brady has failed to state a claim for relief against these defendants based on a failure to provide him, or his defense attorney, exculpatory information. Accordingly, the district judge should dismiss Brady's due process claims.

II. State Tort Claims

A. Breach of Duties

Brady alleges that the defendants breached their "fiduciary duty" to the child victim in this case, Compl. (Doc. No. 1), at 10, and that the defendants and DCYF[3] breached their "duty to exercise reasonable care in the legal custody and control of the child," id. at 13-14. The child victim is not a plaintiff in this action. Furthermore, Brady is prohibited from representing anyone other than himself, as pro se litigants cannot prosecute claims on behalf of anyone other than themselves in this court. See 28 U.S.C. § 1654; LR 83.2(d). Thus, Brady may not obtain relief for a breach of duty allegedly owed to the child, and the district judge should dismiss Brady's claims asserted on behalf of the child victim.

---

[3]DCYF is not a defendant in this action, and the complaint does not allege that DCYF played any role in the sexual assault investigation, Brady's arrest, or his detention.

### B. Negligent Training and Supervision

Brady asserts that "[n]egligent training and supervision on all the defendant[s]" have caused him pain and suffering, past, present and future permanent mental and emotional pain and suffering, loss of enjoyment of life, the cost of therapeutic and medical care and treatment, and lost earning capacity. Compl. (Doc. No. 1), at 14. "[A] claim of negligent hiring, training and supervision can encompass direct liability as a result of the misconduct of [an] employee." Cutter v. Town of Farmington, 498 A.2d 316, 320 (N.H. 1985). "A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent." Restatement (Third) of Agency § 7.05 (2006).

As an initial matter, Brady does not allege facts demonstrating, or from which it could be reasonably inferred, that defendants Stapleton, St. Pierre, or Roberts employ or have supervisory authority over any of the other defendants. As such, Brady has failed to state a claim for relief against Stapleton, St. Pierre, and Roberts for negligent training and supervision, and the district judge should dismiss Brady's

13

claims asserting negligent training and supervision against those defendants.

Brady alleges the WPD has supervisory authority over defendants Stapleton and St. Pierre. He contends that neither Stapleton nor St. Pierre was trained to conduct sexual assault investigations; that the WPD knowingly allowed false information about St. Pierre's training and expertise to be included in the warrant application for Brady's arrest; that Stapleton and St. Pierre had a negative history with Brady that pre-dated the sexual assault investigation; that Brady filed complaints against Stapleton and St. Pierre with the WPD prior to the sexual assault investigation, and that Stapleton and St. Pierre knew the victim identified a white female as her assailant, but they alleged in the warrant application that she identified a black male as her assailant.

The allegations in the complaint sufficiently state claims for negligent selection and supervision against the WPD to survive preliminary review. In an Order issued this date, the court has directed service of state tort claims for negligent selection and supervision against the WPD.

## Conclusion

For the foregoing reasons, the district judge should dismiss: all § 1983 claims against the Whitefield Police

Department, the § 1983 due process claims against Stapleton, St. Pierre, and Roberts, and the state law claims of negligence asserted on behalf of the child victim. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge

June 13, 2019

cc: Darren Brady, pro se